CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD REGAN COX, | ) |
| | ) Civil Action No. 7:13-cv-197 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) Hon. James C. Turk |
| Acting Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Ronald Regan Cox ("Plaintiff" or "Cox") brought this action challenging the final decision of the Commissioner of Social Security ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income ("SSI") and disability insurance benefits, ("DIB"), under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433; 1381-1383f. This Court has jurisdiction over the action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both Cox and the Commissioner filed motions for Summary Judgment. ECF Nos. 13, 15. Oral argument was heard on December 12, 2013, and the motions are now ripe for disposition.

In his appeal, Cox primarily challenges the ALJ's decision to give only "limited weight" to the opinions of Ericka S. Young, D.O., who performed a consultative medical examination of Cox and also reviewed his medical records. He contends that the ALJ improperly discounted Dr. Young's opinion as being inconsistent with the "minimal" findings during clinical examination because the medical records reviewed by Dr. Young reflected significant impairment and supported her opinion. He also contends that Dr. Young's opinion is supported by Cox's own

1

descriptions of his functional limitations.[1] ECF No. 14.

For the reasons set forth below, the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Commissioner's Motion for Summary Judgment, ECF No. 15, is **GRANTED** and Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

I.     **STANDARD OF REVIEW**

When reviewing the Commissioner's final decision, the Court is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted); Hancock, 667 F.3d at 472. If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

---

[1] Relatedly, he posits that the ALJ's reliance on two reviewing State agency physicians to reject Dr. Young's findings, was improper. He points out what he believes to be a glaring inconsistency, i.e., that Dr. Young's consultative examination was ordered by the agency because the state reviewers said the medical evidence was insufficient to support a decision on the claim, but after Dr. Young's report was issued, those same reviewers relied on the same medical record to essentially reject Dr. Young's findings. ECF No. 14 at 6-7.

decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

Cox bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functional

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural Background

Cox was born on December 22, 1973, R. 41,[3] was thirty-one years old on the alleged disability onset date, and was thirty-eight years old at the time of the ALJ's decision on January 24, 2012. R. 29. At all relevant times, therefore, he was a "younger person" under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education and previously worked as a machine operator (semi-skilled, medium work), and a fabricator/trimmer (unskilled, heavy work). R. 29.

Cox filed two prior applications for benefits, both alleging disability beginning in June 2005, the same onset date alleged in this case. R. 219, 41-42, 45-46. Both of those claims were denied. R. 219. Cox filed this third application for DIB and SSI on September 11, 2009. R. 191-206.

Cox's claim was denied at the initial and reconsideration levels of administrative review. R. 119-124; 129-142. At a December 7, 2011 video hearing before ALJ Steven A. DeMonbreum, both Cox (who was represented by counsel) and a vocational expert ("VE") testified. See R. 37-76 (transcript from hearing). The ALJ issued his decision on January 24, 2012, finding that Cox was not disabled because his RFC allowed him to perform jobs that exist in significant numbers in the national economy. See R. 30-31; see also generally R. 18-31 (ALJ's decision).

In reaching this conclusion, the ALJ properly utilized the five-step process for determining whether a claimant is disabled. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th

---

[3] The Court cites to specific pages of the Administrative Record, filed at ECF No. 9, as "R. __."

Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520) (setting forth the five steps). The ALJ first determined that Cox met the insured status requirements of the Act through December 31, 2010, and that he had not engaged in substantial gainful activity since his alleged onset date through his date last insured. R. 20. At the second step, the ALJ concluded that Cox had three severe impairments, specifically: "degenerative disc disease, obesity; and history of seizures." R. 20. He concluded at the third step that none of his impairments or combination of impairments met or medically equaled the severity of any listed impairment. R. 22-23.

Based on the evidence before him, the ALJ determined that Cox had the residual functional capacity, through the date last insured, to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be capable of lifting/carrying 10 pounds frequently and 20 pounds occasionally/ standing/walking for 6 hours in a normal 8 hour work day; sitting for 6 hours in a normal 8 hour work day; occasionally climbing ramps and stairs, balancing, kneeling, crawling, crouching, and stooping, but precluded from climbing ropes, ladders, or scaffolds due to his history of seizure activity. Additionally, the claimant should avoid all exposure to hazards including heights and heavy machinery due to his history of seizure activity but would experience no significant manipulative, environmental, communicative, or visual restrictions.

R. 23-24. The ALJ relied on the VE's testimony that this RFC would allow Cox to perform jobs that existed in significant numbers in the national economy, although it would not have allowed him to perform his past work. R. 29-31. Accordingly, the ALJ concluded Cox was not disabled under the Act. R. 30-31.

Cox requested Appeals Council review of the ALJ's decision, R. 14, but the Appeals Council denied review, R. 1-4, rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Cox timely filed this Complaint seeking review.

## B. Medical and Other Evidence[4]

According to his application for benefits and testimony at the hearing, Cox previously had problems with his back, and he re-injured his back when he was thrown from a boat in May or June 2005.[5] After the accident, he continued to work full-time in a temporary position as a metal fabricator until October 2005 when the "job ran out," although he testified that he had difficulty doing his job during those months. Id. at 42.

Cox testified that his middle back "hurt 24 hours a day, every day of the week[,]" that he "can't hardly lift anything now without . . . making it hurt worse." R. 53. Similarly, in his pain questionnaire, Cox indicated that he experienced aching and throbbing pain in his middle and lower back, that the pain worsened when sitting and standing for long periods of time, lifting, bending, and stooping. R. 238. He also indicated that both medication (Lortab) and lying down helped relieve the pain. Id.

In terms of his daily functioning, Cox did not report being severe limitations. For example, when asked to describe what he did each day from waking until bedtime, he responded, "Normal activities that people do." R. 241. He indicated that has no problems with his own personal care, and that he prepares daily meals, goes grocery shopping, does laundry (with some help carrying the laundry) and performs regular house maintenance. R. 242-43. He is also able to drive, go out by himself, and fish a couple of times a month. R. 244-45. He testified that elevating his leg helps his pain, but that after he sits for about fifteen minutes, he needs to walk

---

[4] As noted by the Commissioner, the only findings Plaintiff challenges are the ALJ's findings with respect to his back condition. See ECF No. 17 at 3 n.1 (citing Pl.'s Br. at 3-10). Because he does not specifically challenge the ALJ's findings as to Cox's anxiety, obesity, seizures, or any of his other alleged impairments, the Court does not include medical background related to them herein.

[5] Neither the parties nor the records are entirely clear about when the boating accident occurred. At the hearing, Cox testified that it was June 2005, R. 42, but at least one medical record indicates that it occurred on May 3, 2005. See, e.g., R. 302. In any event, it is undisputed that the first time Cox saw a physician subsequent to the accident was on June 30, 2005. See R. 302.

around before he can sit again. He also testified—inconsistently with his pain questionnaire—that the Lortab did not work for his pain, although he took it from 2005 until 2010. R. 57; see R. 239. At the time of the hearing, he was taking Suboxone to treat his opioid dependence. R. 58.

The first time he saw a doctor after his boating accident was on June 30, 2005, when he was seen by Dr. Lovelace. R. 302. Dr. Lovelace prescribed Lortab and ordered an x-ray, id., which showed a "mild anterior wedge compression of the T12 and L1 vertebrae" that "could be related to previous injury." It also showed "[m]inimal degenerative disc disease at the L5-S1 . . . right more than left side." R. 307. He also had a follow-up MRI, which showed "no evidence of any disk protrusion" and only a "probable mild narrowing of L2-L3 disk space" and "mild narrowing of the D12-L1 intervertebral disk with small degenerative spur formation at adjacent vertebral margins." R. 306.

Cox returned to Dr. Lovelace approximately twice a year over the next four years. He complained at each of those visits of back pain, and was given prescription refills for Lortab. On some of these visits, his straight leg raise test was positive. See, e.g., R. 293, 295, 296, 300, 302. In January 2010, Plaintiff reported daily aching back pain, although his straight leg raise test was negative. R. 303. Dr. Lovelace prescribed Hydrocodone at that visit. Id.

On March 11, 2010, Cox had another MRI performed that showed only mild degenerative spurring that was unchanged from 2005. R. 290. On May 4, 2010, Cox reported to Dr. Lovelace that he was having difficulty walking, standing, and sitting, and that his pain was a seven on a ten-point scale. R. 292. Again, Dr. Lovelace prescribed Lortab and told Plaintiff to return in four months. On November 5, 2011, Jann Holwick, M.D., wrote a letter stating that she had been treating Cox for opioid dependence since February 2, 2011. R. 348.

Ericka Young, D.O., examined Plaintiff at the state agency's request on March 6, 2010. At that time, Cox reported to Dr. Young that his pain was an eight on a ten-point scale, and that

his medication provided little relief. He also reported that he could do light yard work, cooking and cleaning, and can perform his own activities of daily living such as feeding himself. R. 285.

In terms of her examination, Dr. Young noted that a straight leg raise test was negative, that the motor strength of his lower extremities was 5/5 bilaterally and that the claimant was able to walk on his toes and heels. R. 286. In terms of his range of motion, the cervical spine was normal in all respects. The thoracolumbar spine had 70 degrees of flexion and normal extension, right later flexion and left lateral flexion, right rotation and left rotation. Dr. Young diagnosed him as having "chronic low back pain with degenerative disc disease, hypertension and anxiety." R. 287. She also provided the following functional assessment:

> The claimant could stand or walk approximately 5 hours in an 8-hour workday. He would need to take breaks from time to time to rest his back. The claimant could sit a total of 5 hours in an 8-hour workday but would need to get up and move around every hour for at least 5 minutes. No assistive devices are medically necessary. The claimant could frequently lift and carry 20 pounds and occasionally up to 25 pounds mainly due to the claimant's back pain, only relying upon his upper body strength. There would be occasional postural limitations with bending, stooping and crouching due to the claimant's back pain. There would be no manipulative limitations. . . .

R. 287.

No other treating or examining physician provided a functional assessment, although both of the state agency physicians who reviewed Cox's medical records opined that Cox was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for up to 6 hours in an 8 hour workday; sitting for 6 hours in an 8 hour work day; unlimited pushing and pulling, and performing occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling but precluded from climbing ropes, ladders or scaffolds. R. 26.

## III. DISCUSSION

In his appeal to this Court, Cox's primary argument is that the ALJ erred in giving only

8

limited weight to Dr. Young's functional assessment. Relatedly, he argues that the ALJ should not have credited the opinions of two state agency doctors over Dr. Young since neither of them examined Cox and where Dr. Young was requested to perform a consultative examination because the medical evidence was insufficient to render an opinion. He contends that the same medical record that was purportedly insufficient to determine whether Cox was disabled cannot be used to discount the opinion of the only examining physician.[6] See generally ECF No. 14. He asserts that if the ALJ had properly credited Dr. Young's opinion and included in the RFC the limitation that Cox needed to take breaks from sitting at least five minutes every hour, the VE's testimony established that Cox would be precluded from competitive employment. See ECF No. 14 at 9-10 (citing R. 75).

The Commissioner counters that the ALJ appropriately reduced the weight of Dr. Young's opinion and that the ALJ's decision is supported by substantial evidence. The Commissioner also posits that the ALJ's credibility determination, in which the ALJ found that Cox's testimony was not credible to the extent he alleged severe pain inconsistent with the RFC, was proper and supported by substantial evidence. See generally ECF No. 17.

Having reviewed the ALJ's reasoning on this issue and the entire record, the Court is convinced that substantial evidence supports the ALJ's RFC and, particularly the ALJ's decision to give little weight to Dr. Young's opinions regarding Cox's functional limitations. An RFC is

---

[6] Cox argues it is "inconsistent" for the ALJ to rely on the state agency physicians to discount Dr. Young's opinion. ECF No. 14 at 6. In particular, he finds it a "puzzling inconsistency" that "the same medical record that was insufficient prior to Dr. Young's report suddenly became sufficient [to reject her findings] after she rendered a report that found Plaintiff to be disabled." Id. But he cites to no authority that suggests that the ALJ's reliance on the agency doctors' opinions is improper. Moreover, an ALJ is required to consider all of the evidence in the record and permitted to discount even a treating source's opinion where that opinion is contradicted by record evidence, as discussed herein. In any event, there is substantial evidence in the record to discount Dr. Young's opinion, even without the benefit of the state physicians' opinions. Thus, the Court finds no error on this ground.

9

an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 419.945. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

When determining a claimant's RFC, the ALJ decides how much weight to assign any medical opinion by considering, among other factors: (1) whether the source is a treating source (who would be able to provide a "detailed, longitudinal picture" of the claimant's health) or instead a source who merely performed an individual examination (such as the examination by Dr. Young here); (2) the supportability of the physician's opinion; and (3) the consistency of the opinion with the record. See 20 C.F.R. §§ 416.927(d); see also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Indeed, even a *treating* physician's medical opinion is entitled to controlling weight only where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1526(c)(2); Hunter v. Sullivan, 993 F.3d 31, 35 (4th Cir. 1992); see also Hines, 453 F.3d at 563 & n.2 (there is no "absolute" rule that greater weight should be afforded to a treating physician's opinion and indeed, it may be given less weight "if there is persuasive contrary evidence") (citation omitted).

The ALJ here carefully reviewed Dr. Young's opinion and the evidence on which it was based, and explained why he was not crediting her opinion:

> The undersigned has considered the clinical opinion of Dr. Young, and gives her assessment limited weight as findings during clinical examination were minimal, yet she provided a significantly restricted functional capacity assessment. Further, clinical radiological findings of the claimant's back show mild degenerative disc disease and there is evidence that the claimant alleged severe, debilitating pain to his treating physician in efforts

10

to get additional narcotic prescriptions to support his heavy reliance on narcotic pain medications.

R. 26. The ALJ also noted that the State Agency physicians had given limited weight to Dr. Young's opinion since it "appeared to rely heavily on claimant's subjective complaints and was an overestimate of claimant's restrictions and limitations." Id.

The ALJ's determination to give little weight to Dr. Young's opinion is supported by substantial evidence. This evidence includes the fact that Dr. Young's own examination revealed little in the way of clinical problems or findings, see R. 285-88, as well as that both MRIs of Plaintiff's back (in 2005 and again in 2010) showed only mild degenerative disc disease and essentially no change during the period. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (opinions not supported by medical signs and laboratory findings should be discounted). Additionally, the ALJ's concern that Plaintiff exaggerated his symptoms to providers in order to obtain pain medication finds support in Dr. Holwick's letter indicating that Cox was being treated for opioid dependence throughout 2011, R. 348. Finally, the ALJ's decision is supported by the absence of any recommended restrictions from Dr. Lovelace, who specifically treated Plaintiff for his back pain over a period of more than five years. See R. 28.[7]

In his memorandum, Plaintiff repeatedly points to Dr. Young's opinion as being supported by his own complaints of pain and reported physical limitations, and repeated complaints to his physicians over the years regarding his back pain. But the ALJ determined that Cox's "statements concerning the intensity, persistence and limiting effects" of his pain are not credible to the extent they are inconsistent with the ALJ's RFC. The Court concludes that this determination, too, is supported by substantial evidence. Notably, it is the ALJ's duty, not this

---

[7] As both parties noted, the ALJ incorrectly stated that he did not receive an opinion from either a treating or examining physician. Obviously, this is not correct as to an "examining" physician, since Dr. Young qualifies as an examining physician. As indicated by the ALJ's discussion of Dr. Young's report, however, he was well aware of Dr. Young's opinions. Thus, reversal is not warranted based on this error in the ALJ's opinion.

11

Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, a reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) In this case, all of the reasons discussed above as to why Dr. Young's opinion was properly discounted apply equally to the ALJ's credibility determination. Most importantly, Cox's own descriptions of his limitations are inconsistent with the medical records and laboratory findings and there is also some evidence to support the assessment that Plaintiff exaggerated in order to obtain medicine. The ALJ also specifically noted Cox's "generally unpersuasive appearance and demeanor while testifying" as only "one observation among many being relied on" to determine his credibility. In short, there is sufficient evidence in the record to support the ALJ's credibility determination and this Court will not disturb it.

Again, the Court does not review the ALJ's decision de novo. Instead, the Court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence supports the ALJ's opinion. The objective medical record simply fails to document the existence of any physical conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment.

## IV. CONCLUSION

The Court has determined that the ALJ's decision is supported by substantial evidence. Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 15, and **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 13.

An appropriate Order shall issue this day.

ENTER: This 18th day of April, 2014.

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge